ALBRA A. GUPTILL *vs.* HENRY HORNE.

*Assignment, delivery and indorsement of a promissory note by a married woman.*
*Amendment.*

Where a woman assigns by delivery a note payable to her order and afterwards marries the maker, her indorsement after such marriage transfers the legal title.

The return day of a writ may be amended according to the evident original intention.

ON EXCEPTIONS.

ASSUMPSIT on a promissory note for $79.00, dated April 8, 1872, given by the defendant to Clarilda A. Guptill, payable to her order in six months from date with interest. The consideration of the note was personal services. Being indebted to her brother, the plaintiff, for board, the original payee transferred and delivered to him, without indorsement, this note as part payment. She subsequently married Mr. Horne, the promisor, and after that, but prior to the commencement of this action, she wrote across

the back of the note her name, and maiden name, thus: "Clarilda A. Horne," "Clarilda A. Guptill," and drew a penmark through the surname of this last signature, or, rather, the lower of these two signatures on the back of the note, it not appearing, except as an inference from these facts, which of these two names was in fact first written. Since the date of the writ, October 19, 1872, Mrs. Horne wrote the name, "Clarilda A. Guptill," across the back of the note. The case having been submitted to the presiding justice he found the foregoing facts and that these several indorsements were made for the purpose of perfecting the plaintiff's title to the note, and ruled that those made before suit brought, transferred the legal title to the note to the plaintiff, and that he was entitled to recover its amount in this action.

The return day in the writ as made was the first Tuesday of January, 1872, a day long past when the writ was made. The action was entered at the January term, 1873, and was answered to generally, but when it came on for trial the defendant moved to dismiss it, because not entered at the return term named; the court overruled this motion and allowed that of the plaintiff for leave to correct this mistake. To all these rulings the defendant excepted.

*William J. Copeland*, for the defendant.

Until her marriage the payee in the note had a right of action. The marriage extinguished that right. The Statutes of Maine give no mutual right of action to the husband and wife and none such exists by common law. *Smith* v. *Gorman*, 41 Maine, 408.

In 1868 this court, *per* Appleton, C. J., said the statute did not contemplate a suit by the wife against the husband, nor that he should be arrested and imprisoned at her instance.

Such has been the uniform construction of this and similar statutes in this State and Massachusetts. *Crowther* v. *Crowther*, 55 Maine, 358.

The statute of Massachusetts, Gen. Statutes, c. 108, is similar to our own. The wife having no right of action can transfer none.

It having been once extinguished she has no power to revive it by transferring it to the plaintiff. *Chapman* v. *Kellogg*, 102 Mass., 246. *Abbott* v. *Winchester*, 105 Mass., 115, is directly in point. A note was given to payee before marriage for her services. The court held that her right of action was not even revived by the death of her husband, and that the plaintiff to whom she indorsed the note after her husband's death, could maintain no action thereon against his administrators. *Tunks* v. *Grover*, 57 Maine, 586, depends upon a different statute and different circumstances, and does not conflict with *Smith* v. *Gorman* and *Crowther* v. *Crowther*, before cited.

The indorsement by the payee by writing her maiden name upon the note was a fraudulent alteration and avoided the note. It is a fraudulent attempt to sustain the plaintiff's action by making it appear that the note had been indorsed to the payee before her marriage, and without such an indorsement there was a variance between the allegation and the proof. Every alteration which in any event may alter a previous liability is material and vitiating, so is any alteration which changes the evidence or mode of proof. 2 Parsons on Notes & Bills, 564.

*George C. Yeaton*, for the plaintiff.

I. The amendment was authorized by R. S., c. 82, § 9; *Ames* v. *Weston*, 16 Maine, 266; *Barker* v. *Norton*, 17 Maine, 416; *Pattee* v. *Lowe*, 35 Maine, 121.

II. Indorsement sufficient at common law.

(1.) Title passed at time of transfer and delivery;—the subsequent act of writing the indorsement, a merely clerical act, relating back to time of transfer. *Ranger* v. *Cary*, 1 Metc., 369. Validity of contract of indorsement between payee and holder not in issue here; simply whether the title of note passed to holder. *Brown* v. *Donnell*, 49 Maine, 421. Equity would have compelled an indorsement, and to such a bill coverture could have been no answer. Story on Prom. Notes, (6th ed.,) 120, and authorities cited.

(2.)   Analysis of such cases as *Smith* v. *Pickering*, Peaks, N. P. C., 50; *Anonymous*, 1 Camp, 492, n., (Ld. Ellenborough); and *Lampriere* v. *Pasley*, 2 T. R., 485, (two being transfers of notes, and the last a bill of lading with bankruptcy intervening before indorsement,) in which plaintiff prevailed, and cases like *Whistler* v. *Forster*, 14 C. B., (N. S.,) 248, and *Lancaster Nat. Bank* v. *Taylor*, 100 Mass., 18, (both transfers of notes voidable for fraud in hands of payee, unindorsed until overdue,) in which plaintiff could not prevail, because he could take no better title than payee had, seems to evolve this rule, as to transfer for value of notes, requiring indorsement, not in fact indorsed until subsequently, to wit: when such note, invalid in the hands of payee, is transferred by delivery alone, no subsequent indorsement, when overdue or after notice of its vice, can make it in hands of holder a better contract than it originally was; but when such note, valid in hands of the payee, is so transferred, no merely personal disability, supervening before the subsequent indorsement, can affect the holder's title.

(3.)   R. S., c. 61, §§ 1–5, conferred full power upon the payee to indorse after marriage.   *Duren* v. *Getchell*, 55 Maine, 241; *Mayo* v. *Hutchinson*, 57 Maine, 546.

APPLETON, C. J.   This is an action of assumpsit on a note signed by the defendant and payable to the order of Clarilda A. Guptill, and by her assigned and delivered to the plaintiff before her intermarriage with the defendant and subsequently indorsed by her.

No question is raised as to the sufficiency of the consideration of the note or of its assignment.

The note having been assigned by delivery the equitable title thereto passed to the assignee.   The assignor henceforth ceased to have any control over it.   Having transferred it, she was bound to do whatever was necessary to protect the assignee in the enjoyment of his property.   He had a right to sue the note in her name and in case of the satisfaction of the judgment by a levy, a court of

Guptill *v.* Horne.

equity would compel her to execute a release of the estate upon which the execution was extended.

In the case at bar the subsequent marriage of the assignor with the maker of the note prevented the bringing of a suit in her name. But the husband acquired no right in, or control over the note by such marriage. Nor was the assignee without remedy. When by mistake, accident or fraud an assignment of a negotiable note is made without indorsement a court of equity will compel the assignor to do whatever may be necessary to render the assignment available to the assignee. "When a note," remarks Lord Eldon, in *Walton* v. *Maule*, 2 Jac. and Walk., 237, "is handed over for a valuable consideration, the indorsement is a mere form; the transfer for consideration is the substance ; it creates an equitable right and entitles the party to call for the form. The other is bound to do the formal act in order to substantiate the right of the party to whom he has transferred it and he is bound to do it." Thus in *ex parte* Mowbray, 1 Jac. and Walk., 148, the assignees in bankruptcy were ordered to indorse a note assigned by delivery before bankruptcy—but without personal liability. This equitable right attaches at the time of the transfer by delivery.

As the wife could have been compelled by a court of equity to indorse, her voluntary act is as effectual to transfer to the indorsee the legal right to sue as if it had been the result of legal compulsion.

But by the statutes of this State, c. 61, § 4, the wife is liable for any debt created for "any lawful purpose." If liable as indorser or surety upon any contract of indorsement or suretyship, much more may she perform the merely clerical act of indorsement. *Mayo* v. *Hutchinson*, 57 Maine, 546.

The amendment of the writ by substituting 1873 for 1872, was properly allowed. It was made to correct an obvious mistake. *Barker* v. *Norton*, 17 Maine, 416. *Exceptions overruled.*

WALTON, DICKERSON, BARROWS, VIRGIN and PETERS, JJ., concurred.